MH:JL:RB/EN
F. #2007R00730

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

JOSEPH AGATE,
VINCENT AMARANTE,
   also known as "Elmo,"
JEROME BRANCATO,
   also known as "Jerry,"
THOMAS CACCIOPOLI,
   also known as "Tommy
   Sneakers,"
FRANK CALI,
NICHOLAS CALVO,
CHARLES CARNEGLIA,
   also known as "Charlie
   Canig,"
JOSEPH CASIERE,
   also known as "Joe
   Rackets,"
MARIO CASSARINO,
   also known as "Lanza,"
DOMENICO CEFALU,
   also known as "Italian
   Dom," "Dominic," "Dom from
   18th Avenue" and "The
   Greaseball,"
JOSEPH CHIRICO,
   also known as "Joe Marco
   Polo,"
JOSEPH COROZZO,
   also known as "JoJo" and
   "Miserable,"
NICHOLAS COROZZO,
   also known as "Nicky,"
   "Little Nicky," "The
   Doctor," "The Little Guy,"
   "Seymour," "Grandpa" and
   "Grandfather,"
GINO CRACOLICI,

I N D I C T M E N T

Cr. No. _____

CR 08 76

(T. 18, U.S.C., §§ 371, 664,
892(a), 894(a)(1), 1027,
1341, 1346, 1349, 1951(a),
1955, 1956(a)(1)(B)(i), 1956(h),
1962(d), 1963, 2 and 3551 et
seq.; T. 29, U.S.C.,))

GARAUFIS, J.

LEVY, M.J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 06 2008 ★

BROOKLYN OFFICE

JOHN D'AMICO,
     also known as "Jackie the
     Nose" and "Jackie,"
SARAH DAURIA,
VINCENT DECONGILIO,
     also known as "Vinny Hot,"
ANTHONY DELVESCOVO,
     also known as "Anthony
     Delvecchio,"
LEONARD DIMARIA,
     also known as "Lenny," "L,"
     "The Conductor," "Nike,"
     "Uncle" and "Fatso,"
VINCENT DONNIS,
VINCENT DRAGONETTI,
     also known as "Vinny,"
     "Skinny," "Mike," "Mikey"
     and "Marbles,"
ROBERT EPIFANIA,
     also known as "Bobby the
     Jew,"
CODY FARRELL,
RUSSELL FERRISI,
     also known as "One Eye,"
     "Dead Eye" and "Russ,"
LOUIS FILIPPELLI,
RONALD FLAM,
JOSEPH GAGGI,
     also known as "Joe Gag,"
ABID GHANI,
     also known as "Han,"
ANTHONY GIAMMARINO,
     also known as "Buckwheat,"
RICHARD G. GOTTI,
VINCENT GOTTI,
ERNEST GRILLO,
     also known as "Ernie,"
     "Eyes" and "Baldy,"
CHRISTOPHER HOWARD,
STEVEN IARIA,
     also known as "Stevie I,"
     "John," "Simon," "Herman"
     and "Alan,"
EDDIE JAMES,
JOHN KASGORGIS,
WILLIAM KILGANNON,
MICHAEL KING,

ANTHONY LICATA,
     also known as "Cheeks,"
     "Anthony Firehawk,"
     "Anthony Nighthawk,"
     "Nighthawk" and "Firehawk,"
LOUIS MOSCA,
LANCE MOSKOWITZ,
ANTHONY O'DONNELL,
     also known as "Tony O,"
JAMES OUTERIE,
     also known as "Big Guy,"
     "Tall Guy," "Treetop,"
     "Top," "Jamesie" and "Bob,"
VINCENT PACELLI,
     also known as "Vinny
     Basile,"
JOHN PISANO,
     also known as "Johnny Red
     Rose,"
TODD POLAKOFF,
GUILIO POMPONIO,
     also known as "Gino,"
RICHARD RANIERI,
     also known as "Fat Richie,"
     "Big Richie," "Joe,"
     "Richie" and "Rich,"
JOHN REGIS,
     also known as "John Reeg"
     and "Reeg,"
JERRY ROMANO,
ANGELO RUGGIERO, JR.,
     also known as "Ang,"
     "Little Ang" and "Junior,"
STEVEN SABELLA,
ANTHONY SCIBELLI,
AUGUSTUS SCLAFANI,
     also known as "Gus" and
     "Gus Boy,"
JOSEPH SCOPO,
WILLIAM SCOTTO,
     also known as "Billy" and
     "Big Billy,"
EDWARD SOBOL,
     also known as "Eddie,"
JOSEPH SPINNATO,
MICHAEL URCIUOLI,
     also known as "Mike the Electrician,"

FRANK VASSALLO,
    also known as "Frankie,"
TARA VEGA,
    also known as "Big Tara,"
    and
ARTHUR ZAGARI,

      Defendants.

- - - - - - - - - - - - - - -X

THE GRAND JURY CHARGES:

    At all times relevant to this Indictment unless otherwise indicated:

The Enterprise

    1.    The members and associates of the Gambino organized crime family of La Cosa Nostra (the "Gambino family") constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The Gambino family constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Gambino family engaged in, and its activities affected, interstate and foreign commerce.  The Gambino family was an organized criminal group that operated in the Eastern District of New York and other parts of the United States.

    2.    The Gambino family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas."  These groups, which were referred to as "crews," "regimes" and "decinas," consisted

4

of "made" members of the Gambino family, also referred to as "soldiers," "friends of ours," "good fellows" and "buttons," as well as associates of the Gambino family.

3.      Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection.  In return, the captain received a share of the earnings of each of the crew's members and associates.

4.      Above the captains were the three highest-ranking members of the Gambino family.  The head of the Gambino family was known as the "boss."  He was assisted by an "underboss" and a counselor, who was known as the "consigliere." With the assistance of the underboss and consigliere, the boss was responsible for setting policy, resolving disputes between members and associates of the Gambino family and members and associates of other criminal organizations, and approving all significant actions taken by members and associates of the Gambino family, including murder.

5.      The boss, underboss and consigliere of the Gambino family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and associates of the Gambino family.  In return for their

supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew.  When a member of the administration was unable to fulfill his criminal responsibilities because of incarceration, ill health or other reason, a member of the Gambino family was often appointed to that position in an acting capacity.

    6.    The Gambino family was part of a nationwide criminal organization known by various names, including the "mafia" and "La Cosa Nostra," which operated through entities known as "families."  The ruling body of this nationwide organization was known as the "commission," the membership of which at various times has included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families.

    7.    From time to time, the Gambino family would propose a list of associates to be "made," that is, to become members of the Gambino family.  The list would be circulated to the other families based in New York City.

The Purposes, Methods and Means of the Enterprise

    8.    The principal purpose of the Gambino family was to generate money for its members and associates.  This purpose was implemented by members and associates of the Gambino family through various criminal activities, including narcotics distribution, extortion, illegal gambling, loansharking, theft,

6

bribery and robbery.  The members and associates of the Gambino family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9.    Although the primary purpose of the Gambino family was to generate money for its members and associates, the members and associates at times used the resources of the Gambino family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Gambino family.  For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10.    The members and associates of the Gambino family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.  That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.    Members and associates of the Gambino family often coordinated street-level criminal activity, such as extortion and fraud, with members and associates of other organized crime families.

The Defendants

12.     At various times relevant to this Indictment, the defendant JOHN D'AMICO, also known as "Jackie the Nose" and "Jackie," was a solider, captain and acting boss in the Gambino family.

13.     At various times relevant to this Indictment, the defendant DOMENICO CEFALU, also known as "Italian Dom," "Dominic," "Dom from 18th Avenue" and "The Greaseball," was a soldier, captain and acting underboss in the Gambino family.

14.     At various times relevant to this Indictment, the defendant JOSEPH COROZZO, also known as "JoJo" and "Miserable," was a soldier, captain and consigliere in the Gambino family.

15.     At various times relevant to this Indictment, the defendant NICHOLAS COROZZO, also known as "Nicky," "Little Nicky," "The Doctor," "The Little Guy," "Seymour," "Grandpa" and "Grandfather," was an associate, soldier and captain in the Gambino family, as well as a member of the committee formed to assist John A. Gotti run the family when he was acting boss of the Gambino family.

16.     At various times relevant to this Indictment, the defendants THOMAS CACCIOPOLI, also known as "Tommy Sneakers," and LEONARD DIMARIA, also known as "Lenny," "L," "The

8

Conductor," "Nike," "Uncle" and "Fatso," were associates, soldiers and captains in the Gambino family.

17.    At various times relevant to this Indictment, the defendants FRANK CALI, LOUIS FILIPPELLI and AUGUSTUS SCLAFANI, also known as "Gus" and "Gus Boy," were associates, soldiers and acting captains in the Gambino family.

18.    At various times relevant to this Indictment, the defendants JEROME BRANCATO, also known as "Jerry," CHARLES CARNEGLIA, also known as "Charlie Canig," MARIO CASSARINO, also known as "Lanza," JOSEPH CHIRICO, also known as "Joe Marco Polo," VINCENT DRAGONETTI, also known as "Vinny," "Skinny," "Mike," "Mikey" and "Marbles," ROBERT EPIFANIA, also known as "Bobby the Jew," RICHARD G. GOTTI, VINCENT GOTTI, ERNEST GRILLO, also known as "Ernie," "Eyes" and "Baldy," ANTHONY LICATA, also known as "Cheeks," "Anthony Firehawk," "Anthony Nighthawk," "Nighthawk" and "Firehawk," JAMES OUTERIE, also known as "Big Guy," "Tall Guy," "Treetop," "Top," "Jamesie" and "Bob," VINCENT PACELLI, also known as "Vinny Basile," ANGELO RUGGIERO, JR., also known as "Ang," "Little Ang" and "Junior," JOSEPH SCOPO and WILLIAM SCOTTO, also known as "Billy" and "Big Billy," were associates and soldiers in the Gambino family.

19.    At various times relevant to this Indictment, the defendants GINO CRACOLICI, VINCENT DECONGILIO, also known as "Vinny Hot," STEVEN IARIA, also known as "Stevie I," "John,"

9

"Simon," "Herman" and "Alan," ANTHONY O'DONNELL, also known as "Tony O," RICHARD RANIERI, also known as "Fat Richie," "Big Richie," "Joe," "Richie" and "Rich," ANTHONY SCIBELLI and JOSEPH SPINNATO were associates in the Gambino family.

20.     At various times relevant to this Indictment, the defendant VINCENT AMARANTE, also known as "Elmo," was a soldier and associate in the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family").

21.     At various times relevant to this Indictment, the defendants STEVEN SABELLA and MICHAEL URCIUOLI, also known as "Mike the Electrician," were associates in the Bonanno family.

22.     At various times relevant to this Indictment, the defendant NICHOLAS CALVO was an associate in the Genovese organized crime family of La Cosa Nostra.

23.     At various times relevant to this Indictment, the defendant MARIO CASSARINO, also known as "Lanza," controlled Jo-Tap Industries, Inc., Jo-Tap Equipment Leasing, Inc. and MBM Industries, Inc.

24.     At various times relevant to this Indictment, the defendant ANTHONY LICATA, also known as "Cheeks," "Anthony Firehawk," "Anthony Nighthawk," "Nighthawk" and "Firehawk," controlled Aragon Enterprises Inc., Night Hawk Enterprise, Inc. and Firehawk Enterprises, Inc.

25.     At various times relevant to this Indictment, the defendant JOSEPH SPINNATO, together with others, controlled Andrews Trucking Corporation, Master Mix, Inc., Master Mix Enterprises, Inc., Dump Masters of NY, Inc. and Dumpmasters Inc.

26.     At various times relevant to this Indictment, the defendant ANTHONY DELVESCOVO, also known as "Anthony Delvecchio," was a Project Manager and Director of Tunnel Operations for Schiavone Construction Company, Inc.

27.     At various times relevant to this Indictment, the defendant SARAH DAURIA was the principal of SRD Contracting Corp.

28.     At various times relevant to this Indictment, the defendant LOUIS MOSCA was a Business Manager for New Jersey Laborers' Union Local 325 of the Laborers' International Union of North America.

29.     At various times relevant to this Indictment, the defendant MICHAEL KING was a Shop Steward for the Building, Concrete, Excavating and Common Laborers' Union Local 731 of Greater New York, affiliated with the Laborers' International Union of North America.

LIUNA Local 325

30.     New Jersey Laborers' Union Local 325 ("Local 325") was a duly chartered local union of the Laborers' International Union of North America ("LIUNA"), and a "labor

11

organization" for purposes of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA") governing labor unions, and as that term is defined in Title 29, United States Code, Sections 402(i) and (j).

LIUNA Local 731

31.    Building, Concrete, Excavating and Common Laborers' Union 731 ("Local 731") was a duly chartered local union of the LIUNA and a "labor organization" for purposes of the LMRDA governing labor unions, and as that term is defined at Title 29, United States Code, Sections 402(i) and (j).

Fiduciaries of Local 325 and Local 731

32.    As Business Manager and Shop Steward of Local 325 and Local 731, respectively, the defendants LOUIS MOSCA and MICHAEL KING were subject to Section 501(a) the LMRDA, 29 U.S.C. § 501(a), as "officers, agents, shop stewards, and other representatives" of a labor organization as described in Section 3(q) of the LMRDA, 29 U.S.C. § 402(q).  Pursuant to Section 501(a) of the LMRDA, "officers, agents, shop stewards, and other representatives" of a labor organization occupy positions of trust in relation to such organization and its members as a group.

33.    In such capacity, the defendants LOUIS MOSCA and MICHAEL KING occupied positions of trust in relation to Local 325 and Local 731 and their respective members as a group and

were subject to the following fiduciary duties: (1) to hold the money and property of their respective labor organization solely for the benefit of the organization and its members and to manage such money and property in accordance with the labor organization's constitution, by-laws and applicable resolutions of the organization's governing bodies; (2) to refrain from dealing with their respective labor organization as an adverse party or in behalf of any adverse party in any matter connected with his duties; (3) to refrain from holding or acquiring any pecuniary or personal interest which conflicts with the interests of their respective labor organization; and (4) to account to their respective labor organization for any profit received in whatever capacity in connection with transactions conducted by them or under their direction on behalf of such organization.

34.    The defendants LOUIS MOSCA and MICHAEL KING, as an officer and representative of Local 325 and Local 731, respectively, were bound to perform their duties in accordance with the requirements of International and Uniform Local Union Constitutions of the LIUNA and the LIUNA Ethical Practices Code. The LIUNA Ethical Practices Code, which was promulgated on February 15, 1995, and incorporated into the LIUNA Constitution sets forth required practices applicable to every Local Union of LIUNA and every member, employee or officer thereof.

## COUNT ONE
### (Racketeering Conspiracy)

35.     The allegations contained in paragraphs one through nineteen and twenty-three through thirty-four are realleged and incorporated as if fully set forth in this paragraph.

36.     In or about and between February 1975 and February 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, also known as "Tommy Sneakers," CHARLES CARNEGLIA, also known as "Charlie Canig," MARIO CASSARINO, also known as "Lanza," DOMENICO CEFALU, also known as "Italian Dom," "Dominic," "Dom from 18th Avenue" and "The Greaseball," JOSEPH COROZZO, also known as "JoJo" and "Miserable," NICHOLAS COROZZO, also known as "Nicky," "Little Nicky," "The Doctor," "The Little Guy," "Seymour," "Grandpa" and "Grandfather," GINO CRACOLICI, JOHN D'AMICO, also known as "Jackie the Nose" and "Jackie," VINCENT DECONGILIO, also known as "Vinny Hot," LEONARD DIMARIA, also known as "Lenny," "L," "The Conductor," "Nike," "Uncle" and "Fatso," VINCENT DRAGONETTI, also known as "Vinny," "Skinny," "Mike," "Mikey" and "Marbles," ROBERT EPIFANIA, also known as "Bobby the Jew," VINCENT GOTTI, RICHARD G. GOTTI, ERNEST GRILLO, also known as "Ernie," "Eyes" and "Baldy," STEVEN IARIA, also known as "Stevie I," "John," "Simon," "Herman" and "Alan," ANTHONY LICATA, also known as "Cheeks," "Anthony Firehawk,"

14

"Anthony Nighthawk," "Nighthawk" and "Firehawk," JAMES OUTERIE, also known as "Big Guy," "Tall Guy," "Treetop," "Top," "Jamesie" and "Bob," RICHARD RANIERI, also known as "Fat Richie," "Big Richie," "Joe," "Richie" and "Rich," ANGELO RUGGIERO, JR., also known as "Ang," "Little Ang" and "Junior," JOSEPH SCOPO, WILLIAM SCOTTO, also known as "Billy" and "Big Billy," and JOSEPH SPINNATO, together with others, being persons employed by and associated with the Gambino family, an enterprise that engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5).

37.    The pattern of racketeering activity through which the above-named defendants agreed to conduct the affairs of the enterprise consisted of racketeering acts one through fifty-six, set forth below in paragraphs thirty-eight through two hundred and thirty-three. Each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

## RACKETEERING ACT ONE
### (Murder Conspiracy/Murder)

38.    The defendant CHARLES CARNEGLIA committed the following acts, either one of which alone constitutes Racketeering Act One:

A.    Conspiracy to Murder Albert Gelb

39.    On or about and between February 10, 1975 and March 11, 1976, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, knowingly and intentionally conspired to cause the death of Albert Gelb, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.    Murder of Albert Gelb

40.    On or about March 11, 1976, within the Eastern District of New York, the defendant CHARLES CARNEGLIA, together with others, with intent to cause the death of Albert Gelb, caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

## RACKETEERING ACT TWO
### (Murder)

41.    On or about November 6, 1977, within the Eastern District of New York, the defendant CHARLES CARNEGLIA, with intent to cause the death of Michael Cotillo, caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

16

## RACKETEERING ACT THREE
### (Murder)

42.     On or about July 29, 1983, within the Eastern District of New York, the defendant CHARLES CARNEGLIA, with intent to cause the death of Salvatore Puma, caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

## RACKETEERING ACT FOUR
### (Cocaine Distribution Conspiracy)

43.     In or about and between January 1985 and December 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH COROZZO and VINCENT GOTTI, together with others, knowingly and intentionally conspired to distribute and possess with intent to distribute a controlled substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## RACKETEERING ACT FIVE
### (Marijuana Distribution Conspiracy)

44.     In or about and between June 1988 and December 1990, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, knowingly and intentionally conspired to distribute and possess with intent to distribute a

17

controlled substance, which offense involved marijuana, a
Schedule I controlled substance, in violation of Title 21, United
States Code, Sections 841(a)(1) and 846.

RACKETEERING ACT SIX
(Murder Conspiracy/Murder)

45.     The defendant CHARLES CARNEGLIA committed the
following acts, either one of which alone constitutes
Racketeering Act Six:

A.     Conspiracy to Murder Louis DiBono

46.     On or about and between September 1, 1990 and
October 4, 1990, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendant CHARLES CARNEGLIA, together with others, knowingly and
intentionally conspired to cause the death of Louis DiBono, in
violation of New York Penal Law Sections 125.25(1) and 105.15.

B.     Murder of Louis DiBono

47.     On or about October 4, 1990, within the
Southern District of New York, the defendant CHARLES CARNEGLIA,
together with others, with intent to cause the death of Louis
DiBono, caused his death, in violation of New York Penal Law
Sections 125.25(1) and 20.00.

<u>RACKETEERING ACT SEVEN</u>
(Robbery Conspiracy/Robbery/Felony Murder)

48.     The defendant CHARLES CARNEGLIA committed the following acts, any one of which alone constitutes Racketeering Act Seven:

A.     <u>Robbery Conspiracy</u>

49.     On or about and between January 1, 1990 and December 14, 1990, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, knowingly and intentionally conspired to forcibly steal property, to wit: United States currency, from employees of an armored car company, while aided by another person actually present, in violation of New York Penal Law Sections 160.10(1) and 105.10.

B.     <u>Robbery</u>

50.     On or about December 14, 1990, within the Eastern District of New York, the defendant CHARLES CARNEGLIA, together with others, did knowingly, intentionally and forcibly steal property, to wit: United States currency, from employees of an armored car company, in violation of New York Penal Law Sections 160.05 and 20.00.

C.     <u>Felony Murder</u>

51.     On or about December 14, 1990, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, knowingly and intentionally

19

committed the robbery of employees of an armored car company and, in the course of and in furtherance of such crime, the defendant or another participant in the robbery caused the death of Jose Delgado Rivera, in violation of New York Penal Law Sections 125.25(3) and 20.00.

RACKETEERING ACT EIGHT
(Extortion Conspiracy/Extortion - John Doe #1)

52.     The defendant CHARLES CARNEGLIA committed the following acts, any one of which alone constitutes Racketeering Act Eight:

A.    Extortion Conspiracy

53.     In or about and between January 1991 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: money, from John Doe #1, an individual whose identity is known to the grand jury, with the consent of John Doe #1, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

20

B.   <u>Extortion</u>

54.   In or about and between January 1991 and
January 2003, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendant
CHARLES CARNEGLIA, together with others, did knowingly and
intentionally obstruct, delay and affect commerce, and the
movement of articles and commodities in commerce, by extortion,
in that the defendant and others obtained property, to wit:
money, from John Doe #1, with the consent of John Doe #1, which
consent was induced through wrongful use of actual and threatened
force, violence and fear, in violation of Title 18, United States
Code, Sections 1951(a) and 2.

C.   <u>New York Penal Law Extortion</u>

55.   In or about and between January 1991 and
January 2003, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendant
CHARLES CARNEGLIA, together with others, did knowingly and
intentionally steal property, to wit: money, from John Doe #1, by
extortion, to wit: by compelling and inducing John Doe #1 to
deliver such property to the defendant by instilling in him a
fear that, if the property was not delivered, the defendant and
others would (1) cause physical injury to John Doe #1 in the
future, (2) cause damage to John Doe #1's property, and (3)
perform an act which would not in itself materially benefit the

defendant, but which was calculated to harm John Doe #1 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

RACKETEERING ACT NINE
(Extortionate Extension of Credit Conspiracy/Extortionate Collection of Credit Conspiracy – John Doe #2 and John Doe #3)

56.   The defendants VINCENT DECONGILIO and VINCENT GOTTI committed the following acts, either one of which alone constitutes Racketeering Act Nine:

A.   Extortionate Extension of Credit Conspiracy

57.   In or about and between January 1993 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DECONGILIO and VINCENT GOTTI, together with others, knowingly and intentionally conspired to make extortionate extensions of credit to John Doe #2 and John Doe #3, individuals whose identities are known to the grand jury, in violation of Title 18, United States Code, Section 892(a).

B.   Extortionate Collection of Credit Conspiracy

58.   In or about and between January 1993 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants

22

VINCENT DECONGILIO and VINCENT GOTTI, together with others, knowingly and intentionally conspired to participate in the use of extortionate means to collect and attempt to collect extensions of credit from John Doe #2 and John Doe #3, in violation of Title 18, United States Code, Section 894(a)(1).

RACKETEERING ACT TEN
(Securities Fraud Conspiracy)

59.     The defendants CHARLES CARNEGLIA and LEONARD DIMARIA committed the following acts, either one of which alone constitutes Racketeering Act Ten:

A.   Securities Fraud Conspiracy

60.     In or about and between January 1995 and December 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CHARLES CARNEGLIA and LEONARD DIMARIA, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, directly and indirectly, in violation of Rule 10b-5 of the Rules and Regulations of the Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), and, directly and indirectly, to (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would

23

  
and did operate as a fraud and deceit upon the investing public, in connection with purchases and sales of certain securities, and by use of means and instrumentalities of interstate commerce and the mails, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, all in violation of Title 18, United States Code, Section 371.

61.    In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants CHARLES CARNEGLIA and LEONARD DIMARIA, and their coconspirators, committed and caused to be committed, among others, the following:

OVERT ACTS

a.    In or about and between November 1995 and March 1996, CHARLES CARNEGLIA attended a meeting with other coconspirators, whose identities are known to the grand jury, to convince a broker not to sell securities pertaining to Ashton Technology Group, Inc. ("Ashton").

b.    In or about and between November 1995 and March 1996, LEONARD DIMARIA had a meeting with a co-conspirator regarding the sale of securities of Ashton and National Medical Financial Corporation.

c.    In or about and between November 1996 and March 1996, CHARLES CARNEGLIA attended a meeting with other coconspirators, whose identities are known to the grand jury,

concerning the sale of securities of Mama Tish's Italian
Specialties, Inc.

### RACKETEERING ACT ELEVEN
(Robbery Conspiracy/Robbery)

62.    The defendant CHARLES CARNEGLIA committed the
following acts, either one of which alone constitutes
Racketeering Act Eleven:

A.    <u>Robbery Conspiracy</u>

63.    On or about and between October 1, 1995 and
November 5, 1995, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendant CHARLES CARNEGLIA, together with others, knowingly and
intentionally conspired to forcibly steal property, to wit:
United States currency, from an employee of Papavero Funeral
Home, while aided by another person actually present, in
violation of New York Penal Law Sections 160.10(1) and 105.10.

B.    <u>Robbery</u>

64.    On or about November 5, 1995, within the
Eastern District of New York, the defendant CHARLES CARNEGLIA,
together with others, did knowingly, intentionally and forcibly
steal property, to wit: United States currency, from an employee
of Papavero Funeral Home, in violation of New York Penal Law
Sections 160.05 and 20.00.

### RACKETEERING ACT TWELVE
(Murder Conspiracy/Murder)

65.    The defendant NICHOLAS COROZZO committed the following acts, either one of which alone constitutes Racketeering Act Twelve:

A.    Conspiracy to Murder Robert Arena and Thomas Maranga

66.    On or about and between January 1, 1996 and January 26, 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS COROZZO, together with others, knowingly and intentionally conspired to cause the death of Robert Arena and Thomas Maranga, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.    Murder of Robert Arena

67.    On or about January 26, 1996, within the Eastern District of New York, the defendant NICHOLAS COROZZO, together with others, with intent to cause the death of Robert Arena, caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

### RACKETEERING ACT THIRTEEN
(Murder)

68.    On or about January 26, 1996, within the Eastern District of New York, the defendant NICHOLAS COROZZO, together with others, with intent to cause the death of Thomas

Maranga, caused his death, in violation of New York Penal Law
Sections 125.25(1) and 20.00.

### RACKETEERING ACT FOURTEEN
#### (Marijuana Distribution Conspiracy)

69.    In or about and between January 1997 and
December 1998, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendants
VINCENT DECONGILIO, RICHARD G. GOTTI and VINCENT GOTTI, together
with others, did knowingly and intentionally conspire to
distribute and possess with intent to distribute a controlled
substance containing marijuana, a Schedule I controlled
substance, in violation of Title 21, United States Code, Sections
841(a)(1) and 846.

### RACKETEERING ACT FIFTEEN
#### (Extortionate Extension of Credit Conspiracy/Extortionate Extension of Credit/Extortionate Collection of Credit Conspiracy/Extortionate Collection of Credit - John Doe #1)

70.    The defendants VINCENT DRAGONETTI and STEVEN
IARIA named below committed the following acts, any one of which
alone constitutes Racketeering Act Fifteen:

A.    Extortionate Extension of Credit Conspiracy

71.    In or about August 1998, within the Eastern
District of New York and elsewhere, the defendants VINCENT
DRAGONETTI and STEVEN IARIA, together with others, knowingly and

intentionally conspired to make an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Section 892(a).

B.   Extortionate Extension of Credit

72.   In or about August 1998, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally made an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Sections 892(a) and 2.

C.   Extortionate Collection of Credit Conspiracy

73.   In or about and between August 1998 and December 1998, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Section 894(a)(1).

D.   Extortionate Collection of Credit

74.   In or about and between August 1998 and December 1998, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally participated in the use of

extortionate means to collect and attempt to collect an extension

of credit from John Doe #1, in violation of Title 18, United

States Code, Sections 894(a)(1) and 2.

<u>RACKETEERING ACT SIXTEEN</u>
(Extortion Conspiracy/Extortion - Trucking)

75.    The defendants THOMAS CACCIOPOLI, ROBERT

EPIFANIA and JOSEPH SCOPO committed the following acts, any one

of which alone constitutes Racketeering Act Sixteen:

A.    <u>Extortion Conspiracy</u>

76.    In or about and between December 1999 and

January 2008, both dates being approximate and inclusive, within

the Eastern District of New York and elsewhere, the defendants

THOMAS CACCIOPOLI, ROBERT EPIFANIA and JOSEPH SCOPO, together

with others, did knowingly and intentionally conspire to

obstruct, delay and affect commerce, and the movement of articles

and commodities in commerce, by extortion, in that the defendants

and others agreed to obtain property, to wit: cash payments

relating to John Doe #4's trucking concerns, from John Doe #4, an

individual whose identity is known to the grand jury, with the

consent of John Doe #4, which consent was to be induced through

wrongful use of actual and threatened force, violence and fear,

in violation of Title 18, United States Code, Sections 1951(a)

and 2.

B.   Extortion

77.   In or about and between December 1999 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, ROBERT EPIFANIA and JOSEPH SCOPO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: cash payments relating to John Doe #4's trucking concerns, from John Doe #4, with the consent of John Doe #4, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.   New York Penal Law Extortion

78.   In or about and between December 1999 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, ROBERT EPIFANIA and JOSEPH SCOPO, together with others, did knowingly and intentionally steal property, to wit: cash payments relating to John Doe #4's trucking concerns, from John Doe #4, by extortion, to wit: by compelling and inducing John Doe #4 to deliver such property to one or more of the defendants by instilling in him a fear that, if the property was not delivered, the defendants and others would (a) cause

physical injury to John Doe #4 in the future, (b) cause damage to John Doe #4's property, and (c) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

<u>RACKETEERING ACT SEVENTEEN</u>
(Extortionate Extension of Credit Conspiracy/Extortionate Extension of Credit/Extortionate Collection of Credit Conspiracy/Extortionate Collection of Credit – John Doe #1)

79.     The defendants VINCENT DRAGONETTI and STEVEN IARIA committed the following acts, any one of which alone constitutes Racketeering Act Seventeen:

A.     <u>Extortionate Extension of Credit Conspiracy</u>

80.     In or about August 2000, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally conspired to make an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Section 892(a).

B.     <u>Extortionate Extension of Credit</u>

81.     In or about August 2000, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and

intentionally made an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Sections 892(a) and 2.

C.   Extortionate Collection of Credit Conspiracy

82.     In or about and between August 2000 and December 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Section 894(a)(1).

D.   Extortionate Collection of Credit

83.     In or about and between August 2000 and December 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

## RACKETEERING ACT EIGHTEEN
(Extortionate Extension of Credit Conspiracy/Extortionate
Extension of Credit/Extortionate Collection of Credit
Conspiracy/Extortionate Collection of Credit – John Doe #1)

84.    The defendants VINCENT DRAGONETTI and STEVEN IARIA committed the following acts, any one of which alone constitutes Racketeering Act Eighteen:

A.    Extortionate Extension of Credit Conspiracy

85.    In or about January 2001, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally conspired to make an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Section 892(a).

B.    Extortionate Extension of Credit

86.    In or about January 2001, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally made an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Sections 892(a) and 2.

C.    Extortionate Collection of Credit Conspiracy

87.    In or about and between January 2001 and April 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others,

knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Section 894(a)(1).

D.   <u>Extortionate Collection of Credit</u>

88.   In or about and between January 2001 and April 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

<u>RACKETEERING ACT NINETEEN</u>
(Extortionate Extension of Credit Conspiracy)

89.   In or about and between May 2001 and June 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally conspired to make extortionate extensions of credit, in violation of Title 18, United States Code, Section 892(a).

34

<u>RACKETEERING ACT TWENTY</u>
(Theft of Union Benefits/Mail Fraud)

90.     The defendant JOSEPH SPINNATO committed the following acts, either one of which alone constitutes Racketeering Act Twenty:

A.     <u>Theft of Union Benefits</u>

91.     In or about and between June 2002 and December 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did embezzle, steal and unlawfully and willfully abstract and convert to his own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA, and of funds connected with such employee benefit plans, in violation of Title 18, United States Code, Sections 664 and 2.

B.     <u>Mail Fraud</u>

92.     In or about and between June 2002 and December 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did knowingly and intentionally

devise a scheme and artifice to defraud the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund and Pension Fund (the "Local 282 Funds") and employees covered by labor contracts with the International Brotherhood of Teamsters Local 282 ("Local 282") who were participants in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses, representations and promises, to wit: contributions to the Local 282 Funds and the contractual right to have such contributions made on behalf of such employees.

93.     It was part of the scheme and artifice that the defendant JOSEPH SPINNATO, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

94.     For the purpose of executing the scheme and artifice, the defendant JOSEPH SPINNATO and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the

Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

RACKETEERING ACT TWENTY-ONE<br>(Theft of Union Benefits/Mail Fraud)

95.     The defendant JOSEPH SPINNATO committed the following acts, either one of which alone constitutes Racketeering Act Twenty-One:

A.     Theft of Union Benefits

96.     In or about and between January 2003 and December 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did embezzle, steal and unlawfully and willfully abstract and convert to his own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of ERISA, and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA, and of funds connected with such employee benefit plans, in violation of Title 18, United States Code, Sections 664 and 2.

B.     Mail Fraud

97.     In or about and between January 2003 and December 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant

37

JOSEPH SPINNATO, together with others, did knowingly and
intentionally devise a scheme and artifice to defraud the Local
282 Funds and employees covered by labor contracts with Local 282
who were participants in the Local 282 Funds and to obtain money
and property, to which the Local 282 Funds and participants were
entitled, by means of false and fraudulent pretenses,
representations and promises, to wit: contributions to the Local
282 Funds and the contractual right to have such contributions
made on behalf of such employees.

      98.    It was part of the scheme and artifice that the
defendant JOSEPH SPINNATO, together with others, would and did
submit and cause to be submitted false information to the Local
282 Funds regarding hours worked by employees covered by labor
contracts with Local 282, claiming that certain hours had been
worked by such employees who had, in fact, worked more hours,
thereby under reporting and under paying contributions to the
Local 282 Funds which were owed to the funds and required to be
made on behalf of the employees.

      99.    For the purpose of executing the scheme and
artifice, the defendant JOSEPH SPINNATO and others did place and
cause to be placed in authorized depositories for mail matter to
be delivered by the United States Postal Service items of mail
matter, to wit: remittance reports and checks payable to the

Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

### RACKETEERING ACT TWENTY-TWO
(Extortionate Extension of Credit Conspiracy)

100.   In or about and between January 2003 and October 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally conspired to make extortionate extensions of credit, in violation of Title 18, United States Code, Section 892(a).

### RACKETEERING ACT TWENTY-THREE
(Murder Conspiracy/Attempted Murder)

101.   The defendants RICHARD G. GOTTI, VINCENT GOTTI and ANGELO RUGGIERO, JR. committed the following acts, either one of which alone constitutes Racketeering Act Twenty-Three:

A.   Conspiracy to Murder John Doe #5

102.   On or about and between April 1, 2003 and May 4, 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RICHARD G. GOTTI, VINCENT GOTTI and ANGELO RUGGIERO, JR., together with others, knowingly and intentionally conspired to cause the death of John Doe #5, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.   Attempted Murder of John Doe #5

103.   On or about May 4, 2003, within the Eastern District of New York, the defendants RICHARD G. GOTTI, VINCENT GOTTI and ANGELO RUGGIERO, JR., together with others, with intent to cause the death of John Doe #5, attempted to cause his death, in violation of New York Penal Law Sections 125.25(1), 110.00 and 20.00.

RACKETEERING ACT TWENTY-FOUR
(Extortion Conspiracy/Extortion –
Staten Island Cement Company)

104.   The defendants THOMAS CACCIOPOLI, MARIO CASSARINO, DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO, LEONARD DIMARIA, ROBERT EPIFANIA and ERNEST GRILLO, committed the following acts, any one of which alone constitutes Racketeering Act Twenty-Four:

A.   Extortion Conspiracy

105.   In or about and between December 2003 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, MARIO CASSARINO, DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO, LEONARD DIMARIA, ROBERT EPIFANIA and ERNEST GRILLO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed

40

to obtain property, to wit: cash and check payments relating to the operation of John Doe #4's Staten Island cement company, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.    Extortion

106.    In or about and between December 2003 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, MARIO CASSARINO, DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO, LEONARD DIMARIA, ROBERT EPIFANIA and ERNEST GRILLO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: cash and check payments relating to the operation of John Doe #4's Staten Island cement company, from John Doe #4, with the consent of John Doe #4, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.    New York Penal Law Extortion

107.    In or about and between December 2003 and January 2008, both dates being approximate and inclusive, within

41

the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, MARIO CASSARINO, DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO, LEONARD DIMARIA, ROBERT EPIFANIA and ERNEST GRILLO, together with others, did knowingly and intentionally steal property, to wit: cash and check payments relating to the operation of John Doe #4's Staten Island cement company, from John Doe #4, by extortion, to wit: by compelling and inducing John Doe #4 to deliver such property to one or more of the defendants by instilling in him a fear that, if the property was not delivered, the defendants and others would (1) cause physical injury to John Doe #4 in the future, (2) cause damage to John Doe #4's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

## RACKETEERING ACT TWENTY-FIVE
### (Theft of Union Benefits/Mail Fraud)

108.    The defendant JOSEPH SPINNATO committed the following acts, either one of which alone constitutes Racketeering Act Twenty-Five:

A.     Theft of Union Benefits

109.     In or about and between January 2004 and December 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did embezzle, steal and unlawfully and willfully abstract and convert to his own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of ERISA, and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA, and of funds connected with such employee benefit plans, in violation of Title 18, United States Code, Sections 664 and 2.

B.     Mail Fraud

110.     In or about and between January 2004 and December 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Local 282 Funds and employees covered by labor contracts with Local 282 who were participants in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses,

representations and promises, to wit: contributions to the Local 282 Funds and the contractual right to have such contributions made on behalf of such employees.

111.    It was part of the scheme and artifice that the defendant JOSEPH SPINNATO, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

112.    For the purpose of executing the scheme and artifice, the defendant JOSEPH SPINNATO and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

## RACKETEERING ACT TWENTY-SIX
### (Theft of Union Benefits/Mail Fraud)

113.    The defendant MARIO CASSARINO committed the following acts, either one of which alone constitutes Racketeering Act Twenty-Six:

44

A.    <u>Theft of Union Benefits</u>

114.      In or about and between November 2004 and December 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MARIO CASSARINO, together with others, did embezzle, steal and unlawfully and willfully abstract and convert to his own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of ERISA, and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA, and of funds connected with such employee benefit plans, in violation of Title 18, United States Code, Sections 664 and 2.

B.    <u>Mail Fraud</u>

115.      In or about and between November 2004 and December 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MARIO CASSARINO, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Local 282 Funds and employees covered by labor contracts with Local 282 who were participants in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses,

representations and promises, to wit: contributions to the Local 282 Funds and the contractual right to have such contributions made on behalf of such employees.

116.    It was part of the scheme and artifice that the defendant MARIO CASSARINO, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

117.    For the purpose of executing the scheme and artifice, the defendant MARIO CASSARINO and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

<u>RACKETEERING ACT TWENTY-SEVEN</u>
(Theft of Union Benefits/Mail Fraud)

118.    The defendant JOSEPH SPINNATO committed the following acts, either one of which alone constitutes Racketeering Act Twenty-Seven:

A.    Theft of Union Benefits

119.    In or about and between January 2005 and December 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did embezzle, steal and unlawfully and willfully abstract and convert to his own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of ERISA, and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA, and of funds connected with such employee benefit plans, in violation of Title 18, United States Code, Sections 664 and 2.

B.    Mail Fraud

120.    In or about and between January 2005 and December 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Local 282 Funds and employees covered by labor contracts with Local 282 who were participants in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses,

47

representations and promises, to wit: contributions to Local 282 Funds.

121.    It was part of the scheme and artifice that the defendant JOSEPH SPINNATO, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

122.    For the purpose of executing the scheme and artifice, the defendant JOSEPH SPINNATO and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

<u>RACKETEERING ACT TWENTY-EIGHT</u>
(Extortion Conspiracy/Extortion - Mayrich Construction Site)

123.    The defendant GINO CRACOLICI committed the following acts, any one of which alone constitutes Racketeering Act Twenty-Eight:

A.   Extortion Conspiracy

124.    On or about and between April 1, 2005 and June 28, 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GINO CRACOLICI, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: cash and check payments relating to John Doe #4's work at a Mayrich Construction Site, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.   Extortion

125.    On or about and between April 1, 2005 and June 28, 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GINO CRACOLICI, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: cash and check payments relating to John Doe #4's work at a Mayrich Construction site, from John Doe #4, with the consent of John Doe #4, which consent was induced through wrongful use of actual and threatened force,

49

violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.   <u>New York Penal Law Extortion</u>

126.   On or about and between April 1, 2005 and June 28, 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GINO CRACOLICI, together with others, did knowingly and intentionally steal property, to wit: cash and check payments relating to John Doe #4's work at a Mayrich Construction site, from John Doe #4, by extortion, to wit: by compelling and inducing John Doe #4 to deliver such property to the defendant by instilling in him a fear that, if the property was not delivered, the defendant and others would (1) cause physical injury to John Doe #4 in the future, (2) cause damage to John Doe #4's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

<u>RACKETEERING ACT TWENTY-NINE</u>
(Extortion/Extortionate Collection of Credit - ADCO Electrical
Corporation Debt)

127.     The defendant WILLIAM SCOTTO committed the

following acts, any one of which alone constitutes Racketeering

Act Twenty-Nine:

A.   <u>Extortion</u>

128.     On or about April 29, 2005, within the Eastern

District of New York and elsewhere, the defendant WILLIAM SCOTTO,

together with others, did knowingly and intentionally obstruct,

delay and affect commerce, and the movement of articles and

commodities in commerce, by extortion, in that the defendant and

others obtained property, to wit: a check payment relating to an

alleged debt owed by John Doe #4 to ADCO Electrical Corporation,

from John Doe #4, with the consent of John Doe #4, which consent

was induced through wrongful use of actual force, violence and

fear, in violation of Title 18, United States Code, Sections

1951(a) and 2.

B.   <u>New York Penal Law Extortion</u>

129.     On or about April 29, 2005, within the Eastern

District of New York and elsewhere, the defendant WILLIAM SCOTTO,

together with others, did knowingly and intentionally steal

property, to wit: a check payment relating to an alleged debt

owed by John Doe #4 to ADCO Electrical Corporation, from John Doe

#4, by extortion, to wit: by compelling and inducing John Doe #4

to deliver such property to the defendant by instilling in him a fear that, if the property was not delivered, the defendant and others would (1) cause physical injury to John Doe #4 in the future, (2) cause damage to John Doe #4's property, and (3) perform an act which would not in itself materially benefit the defendant, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

    C.   <u>Extortionate Collection of Credit</u>

       130.    On or about April 29, 2005, within the Eastern District of New York and elsewhere, the defendant WILLIAM SCOTTO, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #4, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

<u>RACKETEERING ACT THIRTY</u>
(Extortion Conspiracy/Attempted Extortion – Pump Truck)

       131.    The defendants NICHOLAS COROZZO and LEONARD DIMARIA committed the following acts, any one of which alone constitutes Racketeering Act Thirty:

A.   <u>Extortion Conspiracy</u>

132.   In or about and between June 2005 and July 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO and LEONARD DIMARIA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money relating to John Doe #4's pump truck business, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.   <u>Attempted Extortion</u>

133.   In or about and between June 2005 and July 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO and LEONARD DIMARIA, together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others attempted to obtain property, to wit: money relating to John Doe #4's pump truck business, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use

of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

      C.   <u>New York Penal Law Attempted Extortion</u>

      134.    In or about and between June 2005 and July 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO and LEONARD DIMARIA, together with others, did knowingly and intentionally attempt to steal property, to wit: cash and check payments relating to John Doe #4's work for the pump truck business, from John Doe #4, by extortion, to wit: by compelling and inducing John Doe #4 to deliver such property to the defendant by instilling in him a fear that, if the property was not delivered, the defendants and others would (1) cause physical injury to John Doe #4 in the future, (2) cause damage to John Doe #4's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix), 110.00 and 20.00.

## RACKETEERING ACT THIRTY-ONE
### (Extortion/Extortionate Collection of Credit – El Camino Trucking Debt)

135.    The defendant WILLIAM SCOTTO committed the following acts, any one of which alone constitutes Racketeering Act Thirty-One:

A.    <u>Extortion</u>

136.    On or about June 8, 2005, within the Eastern District of New York and elsewhere, the defendant WILLIAM SCOTTO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: money relating to an alleged debt owed by John Doe #4 to El Camino Trucking Corporation, from John Doe #4, with the consent of John Doe #4, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.    <u>New York Penal Law Extortion</u>

137.    On or about June 8, 2005, within the Eastern District of New York and elsewhere, the defendant WILLIAM SCOTTO, together with others, did knowingly and intentionally steal property, to wit: money relating to an alleged debt owed by John Doe #4 to El Camino Trucking Corporation, from John Doe #4, by extortion, to wit: by compelling and inducing John Doe #4 to

deliver such property to the defendant by instilling in him a fear that, if the property was not delivered, the defendant and others would (1) cause physical injury to John Doe #4 in the future, (2) cause damage to John Doe #4's property, and (3) perform an act which would not in itself materially benefit the defendant, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

C.   <u>Extortionate Collection of Credit</u>

138.   On or about June 8, 2005, within the Eastern District of New York and elsewhere, the defendant WILLIAM SCOTTO, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #4, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

<u>RACKETEERING ACT THIRTY-TWO</u>
(Extortion Conspiracy/Attempted Extortion - Construction List)

139.   The defendants NICHOLAS COROZZO, LEONARD DIMARIA, ERNEST GRILLO and ANGELO RUGGIERO, JR. committed the following acts, any one of which alone constitutes Racketeering Act Thirty-Two:

A.  <u>Extortion Conspiracy</u>

140.    In or about and between July 2005 and January
2008, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
NICHOLAS COROZZO, LEONARD DIMARIA, ERNEST GRILLO and ANGELO
RUGGIERO, JR., together with others, did knowingly and
intentionally conspire to obstruct, delay and affect commerce,
and the movement of articles and commodities in commerce, by
extortion, in that the defendants and others agreed to obtain
property, to wit: money, from a number of individuals and
companies in the construction industry, whose identities are
known to the grand jury, with the consent of those individuals,
which consent was to be induced through wrongful use of actual
and threatened force, violence and fear, in violation of Title
18, United States Code, Sections 1951(a) and 2.

B.  <u>Attempted Extortion</u>

141.    In or about and between July 2005 and January
2008, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
NICHOLAS COROZZO, LEONARD DIMARIA, ERNEST GRILLO and ANGELO
RUGGIERO, JR., together with others, did knowingly and
intentionally attempt to obstruct, delay and affect commerce, and
the movement of articles and commodities in commerce, by
extortion, in that the defendant and others attempted to obtain

property, to wit: money, from a number of individuals and companies in the construction industry, whose identities are known to the grand jury, with the consent of those individuals, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.   New York Penal Law Attempted Extortion

142.   In or about and between July 2005 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA, ERNEST GRILLO and ANGELO RUGGIERO, JR., together with others, did knowingly and intentionally attempt to steal property, to wit: money relating to a number of individuals and companies in the construction industry, whose identities are known to the grand jury, by extortion, to wit: by compelling and inducing the individuals to deliver such property to the defendants by instilling in them a fear that, if the property was not delivered, the defendants and others would (1) cause physical injury to those individuals in the future, (2) cause damage to those individuals's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm those individuals materially with respect to their health, safety, business, calling, career, financial condition, reputation and

personal relationships, in violation of New York Penal Law

Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii),

155.05(2)(e)(ix), 110.00 and 20.00.

<u>RACKETEERING ACT THIRTY-THREE</u>
(Illegal Gambling – Bookmaking)

143.    The defendants NICHOLAS COROZZO, LEONARD

DIMARIA, VINCENT DRAGONETTI, STEVEN IARIA, JAMES OUTERIE and

RICHARD RANIERI committed the following acts, either one of which

alone constitutes Racketeering Act Thirty-Three:

A.    <u>Illegal Gambling</u>

144.    In or about and between September 2005 and

January 2008, both dates being approximate and inclusive, within

the Eastern District of New York and elsewhere, the defendants

NICHOLAS COROZZO, LEONARD DIMARIA, VINCENT DRAGONETTI, STEVEN

IARIA, JAMES OUTERIE and RICHARD RANIERI, together with others,

knowingly and intentionally conducted, financed, managed,

supervised, directed and owned all or part of an illegal gambling

business, to wit: a gambling business involving bookmaking, which

operated in violation of the laws of the State of New York, to

wit: New York Penal Law Sections 225.05, 225.10(1) and 20.00,

which involved five or more persons who conducted, financed,

managed, supervised, directed and owned all or part of such

business and which remained in substantially continuous operation

for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

B.   New York Penal Law Illegal Gambling

145.   In or about and between September 2005 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA, VINCENT DRAGONETTI, STEVEN IARIA, JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally advanced and profited from unlawful gambling activity by engaging in bookmaking, in that they received and accepted in any one day more than five bets totaling more than five thousand dollars, in violation of New York Penal Law Sections 225.10(1) and 20.00.

RACKETEERING ACT THIRTY-FOUR
(Bribery of a Labor Official/Honest Services Mail Fraud/
Embezzlement of Union Assets – Laborers' Local 325)

146.   The defendant LEONARD DIMARIA committed the following acts, any one of which alone constitutes Racketeering Act Thirty-Four:

A.   Bribery of a Labor Official

147.   On or about and between September 16, 2005 and July 14, 2006, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LEONARD DIMARIA, together with others, knowingly and intentionally conferred and

offered benefits to a labor official, that is, Louis Mosca, who is not named as a defendant in this Racketeering Act, with the intent to influence him in respect to his acts, decisions and duties as a labor official, in violation of New York Penal Law Section 180.15.

B.   Honest Services Mail Fraud

148.   On or about and between September 16, 2005 and July 14, 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LEONARD DIMARIA and Louis Mosca, together with others, did knowingly and intentionally devise a scheme and artifice to defraud Local 325 and its members and to obtain property, to wit: a LIUNA membership card issued to a person not entitled to journeyworker membership in the union, by means of false and fraudulent pretenses, relationships and promises and to deprive them of the intangible right to the honest services of Louis Mosca, including the honest services Mosca owed to Local 325 and its members pursuant to Section 501(a) of the LMRDA, the LIUNA Ethical Practices Code and the Uniform Local Union Constitution of the LIUNA.

149.   It was part of the scheme and artifice to defraud that Louis Mosca agreed to accept and accepted a thing of value from John Doe #4 with the intent to be influenced in his

61

decisions regarding the admission of an individual to membership in Local 325 and the placement of the individual in a job.

150.    For the purpose of executing the scheme and artifice, the defendant LEONARD DIMARIA and Louis Mosca and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: written information pertaining to an individual proposed for membership in the LIUNA and a LIUNA membership card, in violation of Title 18, United States Code, Sections 1341, 1346 and 2.

C.    Embezzlement of Union Assets

151.    On or about and between September 16, 2005 and July 14, 2006, both dates being approximate and inclusive, in the Eastern District of New York and elsewhere, the defendant LEONARD DIMARIA, together with others including Louis Mosca, while Mosca was an officer of Local 325, did embezzle, steal and unlawfully and willfully abstract and convert to their own use the moneys, funds, securities, property, and other assets of Local 325, to wit: an application document pertaining to an individual proposed for membership in the LIUNA and a LIUNA membership card, in exchange for approximately $2,000, in violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

62

## RACKETEERING ACT THIRTY-FIVE
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit - John Doe #6)

152.    The defendants JAMES OUTERIE and RICHARD RANIERI committed the following acts, either one of which alone constitutes Racketeering Act Thirty-Five:

A.    Extortionate Collection of Credit Conspiracy

153.    In or about and between November 2005 and May 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #6, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

B.    Extortionate Collection of Credit

154.    In or about and between November 2005 and May 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #6, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

63

<u>RACKETEERING ACT THIRTY-SIX</u>
(Theft of Union Benefits/Mail Fraud)

155.    The defendant ANTHONY LICATA committed the
following acts, either one of which alone constitutes
Racketeering Act Thirty-Six:

A.    <u>Theft of Union Benefits</u>

156.    In or about and between January 2006 and
December 2006, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendant
ANTHONY LICATA, together with others, did embezzle, steal and
unlawfully and willfully abstract and convert to his own use,
moneys, funds, securities, premiums, credits, property and other
assets of the International Brotherhood of Teamsters Local 282
Health and Welfare Benefit Fund, an employee welfare benefit plan
subject to Title I of ERISA, and the International Brotherhood of
Teamsters Local 282 Pension Fund, an employee pension benefit
plan subject to Title I of ERISA, and of funds connected with
such employee benefit plans, in violation of Title 18, United
States Code, Sections 664 and 2.

B.    <u>Mail Fraud</u>

157.    In or about and between January 2006 and
January 2008, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendant
ANTHONY LICATA, together with others, did knowingly and
intentionally devise a scheme and artifice to defraud the Local

64

282 Funds and employees covered by labor contracts with Local 282 who were participants in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses, representations and promises, to wit: contributions to the Local 282 Funds and the contractual right to have such contributions made on behalf of such employees.

158.    It was part of the scheme and artifice that the defendant ANTHONY LICATA, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

159.    For the purpose of executing the scheme and artifice, the defendant ANTHONY LICATA and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

<u>RACKETEERING ACT THIRTY-SEVEN</u>
(Theft of Union Benefits/Mail Fraud)

160.    The defendant JOSEPH SPINNATO committed the following acts, either one of which alone constitutes Racketeering Act Thirty-Seven:

A.    <u>Theft of Union Benefits</u>

161.    In or about and between January 2006 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did embezzle, steal and unlawfully and willfully abstract and convert to his own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of ERISA, and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA, and of funds connected with such employee benefit plans, in violation of Title 18, United States Code, Sections 664 and 2.

B.    <u>Mail Fraud</u>

162.    In or about and between January 2006 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did knowingly and

intentionally devise a scheme and artifice to defraud the Local 282 Funds and employees covered by labor contracts with Local 282 who were participants in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses, representations and promises, to wit: contributions to the Local 282 Funds and the contractual right to have such contributions made on behalf of such employees.

163.    It was part of the scheme and artifice that the defendant JOSEPH SPINNATO, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

164.    For the purpose of executing the scheme and artifice, the defendant JOSEPH SPINNATO and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

RACKETEERING ACT THIRTY-EIGHT
(Extortion Conspiracy/Extortion - NASCAR Construction Site)

165.    The defendants MARIO CASSARINO, DOMENICO CEFALU, NICHOLAS COROZZO, LEONARD DIMARIA, VINCENT DRAGONETTI and ERNEST GRILLO committed the following acts, any one of which alone constitutes Racketeering Act Thirty-Eight:

A.    Extortion Conspiracy

166.    In or about and between January 2006 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MARIO CASSARINO, DOMENICO CEFALU, NICHOLAS COROZZO, LEONARD DIMARIA, VINCENT DRAGONETTI and ERNEST GRILLO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: cash payments relating to John Doe #4's work at a Staten Island NASCAR construction site, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.    Extortion

167.    In or about and between January 2006 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants

68

MARIO CASSARINO, DOMENICO CEFALU, NICHOLAS COROZZO, LEONARD
DIMARIA, VINCENT DRAGONETTI and ERNEST GRILLO, together with
others, did knowingly and intentionally obstruct, delay and
affect commerce, and the movement of articles and commodities in
commerce, by extortion, in that the defendants and others
obtained property, to wit: cash payments relating to John Doe
#4's work at a Staten Island NASCAR construction site, from John
Doe #4, with the consent of John Doe #4, which consent was
induced through wrongful use of actual force, violence and fear,
in violation of Title 18, United States Code, Sections 1951(a)
and 2.

  C. <u>New York Penal Law Extortion</u>

   168.  In or about and between January 2006 and
January 2008, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendants
MARIO CASSARINO, DOMENICO CEFALU, NICHOLAS COROZZO, LEONARD
DIMARIA, VINCENT DRAGONETTI and ERNEST GRILLO, together with
others, did knowingly and intentionally steal property, to wit:
cash payments relating to John Doe #4's work at a Staten Island
NASCAR construction site, from John Doe #4, by extortion, to wit:
by compelling and inducing John Doe #4 to deliver such property
to one or more of the defendants by instilling in him a fear
that, if the property was not delivered, the defendants and
others would (1) cause physical injury to John Doe #4 in the

future, (2) cause damage to John Doe #4's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

<u>RACKETEERING ACT THIRTY-NINE</u>
(Extortion Conspiracy/Extortion - Excavation Company)

169.    The defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI committed the following acts, any one of which alone constitutes Racketeering Act Thirty-Nine:

A.    <u>Extortion Conspiracy</u>

170.    In or about and between January 2006 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: check payments relating to John Doe #4's excavation company, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and

fear, in violation of Title 18, United States Code, Sections
1951(a) and 2.

B.   Extortion

171.   In or about and between January 2006 and
January 2008, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendants
NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI,
together with others, did knowingly and intentionally obstruct,
delay and affect commerce, and the movement of articles and
commodities in commerce, by extortion, in that the defendants and
others obtained property, to wit: check payments relating to John
Doe #4's excavation company, from John Doe #4, with the consent
of John Doe #4, which consent was induced through wrongful use of
actual force, violence and fear, in violation of Title 18, United
States Code, Sections 1951(a) and 2.

C.   New York Penal Law Extortion

172.   In or about and between January 2006 and
January 2008, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendants
NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI,
together with others, did knowingly and intentionally steal
property, to wit: check payments relating to John Doe #4's
excavation company, from John Doe #4, by extortion, to wit: by
compelling and inducing John Doe #4 to deliver such property to

71

one or more of the defendants by instilling in him a fear that,
if the property was not delivered, the defendants and others
would (1) cause physical injury to John Doe #4 in the future, (2)
cause damage to John Doe #4's property, and (3) perform an act
which would not in itself materially benefit the defendants, but
which was calculated to harm John Doe #4 materially with respect
to his health, safety, business, calling, career, financial
condition, reputation and personal relationships, in violation of
New York Penal Law Sections 155.30(6), 155.05(2)(e)(i),
155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

<u>RACKETEERING ACT FORTY</u>
(Extortion Conspiracy/Extortionate Extension of Credit
Conspiracy/Extortionate Extension of Credit - Cracolici Dispute)

173.    The defendants GINO CRACOLICI, ANTHONY LICATA
and WILLIAM SCOTTO committed the following acts, any one of which
alone constitutes Racketeering Act Forty:

A.    <u>Extortion Conspiracy</u>

174.    On or about and between January 1, 2006 and
March 17, 2006, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendants GINO CRACOLICI, ANTHONY LICATA and WILLIAM SCOTTO,
together with others, did knowingly and intentionally conspire to
obstruct, delay and affect commerce, and the movement of articles
and commodities in commerce, by extortion, in that the defendants
and others agreed to obtain property, to wit: money from John Doe

#4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.   Extortionate Extension of Credit Conspiracy

175.     On or about and between January 1, 2006 and March 17, 2006, within the Eastern District of New York and elsewhere, the defendants GINO CRACOLICI, ANTHONY LICATA and WILLIAM SCOTTO, together with others, knowingly and intentionally conspired to make an extortionate extension of credit to John Doe #4, in violation of Title 18, United States Code, Section 892(a).

C.   Extortionate Extension of Credit

176.     On or about and between January 1, 2006 and March 17, 2006, within the Eastern District of New York and elsewhere, the defendants GINO CRACOLICI, ANTHONY LICATA and WILLIAM SCOTTO, together with others, knowingly and intentionally made an extortionate extension of credit to John Doe #4, in violation of Title 18, United States Code, Sections 892(a) and 2.

RACKETEERING ACT FORTY-ONE
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit - John Doe #7)

177.     The defendants JAMES OUTERIE and RICHARD RANIERI committed the following acts, either one of which alone constitutes Racketeering Act Forty-One:

73

A.   <u>Extortionate Collection of Credit Conspiracy</u>

178.     In or about and between March 2006 and June 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #7, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

B.   <u>Extortionate Collection of Credit</u>

179.     In or about and between March 2006 and June 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #7, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

<u>RACKETEERING ACT FORTY-TWO</u>
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit - John Doe #8)

180.     The defendants JAMES OUTERIE and RICHARD RANIERI committed the following acts, either one of which alone constitutes Racketeering Act Forty-Two:

74

A.    Extortionate Collection of Credit Conspiracy

181.    In or about and between March 2006 and May 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #8, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

B.    Extortionate Collection of Credit

182.    In or about and between March 2006 and May 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #8, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

RACKETEERING ACT FORTY-THREE
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit - John Doe #9)

183.    The defendants JAMES OUTERIE and RICHARD RANIERI committed the following acts, either one of which alone constitutes Racketeering Act Forty-Three:

75

A.   <u>Extortionate Collection of Credit Conspiracy</u>

184.    In or about and between April 2006 and May 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #9, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

B.   <u>Extortionate Collection of Credit</u>

185.    In or about and between April 2006 and May 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #9, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

<u>RACKETEERING ACT FORTY-FOUR</u>
(Extortion Conspiracy/Extortion –
Liberty View Harbor Construction Site)

186.    The defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI committed the following acts, any one of which alone constitutes Racketeering Act Forty-Four:

A.   <u>Extortion Conspiracy</u>

187.    In or about and between April 2006 and June 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: cash and check payments and business assets relating to John Doe #4's work at the Liberty View Harbor construction site, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.   <u>Extortion</u>

188.    In or about and between April 2006 and June 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: cash and check payments and

business assets relating to John Doe #4's work at the Liberty
View Harbor construction site, from John Doe #4, with the consent
of John Doe #4, which consent was induced through wrongful use of
actual and threatened force, violence and fear, in violation of
Title 18, United States Code, Sections 1951(a) and 2.

      C.   <u>New York Penal Law Extortion</u>

        189.    In or about and between April 2006 and June
2007, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI,
together with others, did knowingly and intentionally steal
property, to wit: cash and check payments and business assets
relating to John Doe #4's work at the Liberty View Harbor
construction site, from John Doe #4, by extortion, to wit: by
compelling and inducing John Doe #4 to deliver such property to
one or more of the defendants by instilling in him a fear that,
if the property was not delivered, the defendants and others
would (1) cause physical injury to John Doe #4 in the future, (2)
cause damage to John Doe #4's property, and (3) perform an act
which would not in itself materially benefit the defendants, but
which was calculated to harm John Doe #4 materially with respect
to his health, safety, business, calling, career, financial
condition, reputation and personal relationships, in violation of

New York Penal Law Sections 155.30(6), 155.05(2)(e)(i),
155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

<u>RACKETEERING ACT FORTY-FIVE</u>
(Money Laundering Conspiracy/Money Laundering)

190.    The defendants NICHOLAS COROZZO, LEONARD

DIMARIA and VINCENT DRAGONETTI committed the following acts,

either one of which alone constitutes Racketeering Act Forty-

Five:

A.    <u>Money Laundering Conspiracy</u>

191.    In or about and between May 2006 and June

2007, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants

NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI,

together with others, did knowingly and intentionally conspire to

conduct financial transactions, in and affecting interstate

commerce, which in fact involved the proceeds of specified

unlawful activity, to wit: monies taken by extortion, in

violation of Title 18, United States Code, Section 1951, knowing

that the property involved in the financial transactions, to wit:

proceeds of the extortion of John Doe #4 with respect to his

excavation company and his work at the Liberty View Harbor

construction site, represented the proceeds of some form of

unlawful activity, knowing that the financial transactions were

designed in whole and in part to conceal and disguise the nature,

location, source, ownership and control of the proceeds of the

specified unlawful activity, in violation of Title 18, United
States Code, Section 1956(a)(1)(B)(i), all in violation of Title
18, United States Code, Section 1956(h).

B.    <u>Money Laundering</u>

192.    In or about and between May 2006 and June
2007, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI,
together with others, did knowingly and intentionally conduct
financial transactions, in and affecting interstate commerce,
which in fact involved the proceeds of specified unlawful
activity, to wit: monies taken by extortion, in violation of
Title 18, United States Code, Section 1951, knowing that the
property involved in the financial transactions, to wit: proceeds
of the extortion of John Doe #4 with respect to his excavation
company and his work at the Liberty View Harbor construction
site, represented the proceeds of some form of unlawful activity,
knowing that the financial transactions were designed in whole
and in part to conceal and disguise the nature, location, source,
ownership and control of the proceeds of the specified unlawful
activity, in violation of Title 18, United States Code, Sections
1956(a)(1)(B)(i) and 2.

<u>RACKETEERING ACT FORTY-SIX</u>
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit – John Doe #10)

193.    The defendant RICHARD RANIERI committed the following acts, either one of which alone constitutes Racketeering Act Forty-Six:

A.    <u>Extortionate Collection of Credit Conspiracy</u>

194.    In or about and between May 2006 and September 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RICHARD RANIERI, together with others, knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #10, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

B.    <u>Extortionate Collection of Credit</u>

195.    In or about and between May 2006 and September 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RICHARD RANIERI, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #10, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

<u>RACKETEERING ACT FORTY-SEVEN</u>
(Extortionate Collection of Credit - John Doe #11)

In or about and between June 2006 and September 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RICHARD RANIERI, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #11, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

<u>RACKETEERING ACT FORTY-EIGHT</u>
(Extortion Conspiracy/Attempted Extortion -
Staten Island Recycling Facility)

196.    The defendants NICHOLAS COROZZO and LEONARD DIMARIA committed the following acts, either one of which alone constitutes Racketeering Act Forty-Eight:

A.    <u>Extortion Conspiracy</u>

197.    In or about and between June 2006 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO and LEONARD DIMARIA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money, from the principals of a Staten Island recycling facility, the identity of which is known

82

to the grand jury, with the consent of the principals, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.   Attempted Extortion

198.   In or about and between June 2006 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO and LEONARD DIMARIA, together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others attempted to obtain property, to wit: money, from the principals of a Staten Island recycling facility, the identity of which is known to the grand jury, with the consent of the principals, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.   New York Penal Law Attempted Extortion

199.   In or about and between June 2006 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO and LEONARD DIMARIA, together with others, did knowingly and intentionally attempt to steal property, to wit:

money from the principals of a Staten Island recycling facility, the identities of which are known to the grand jury, by extortion, to wit: by compelling and inducing the principals of the recycling facility to deliver such property to the defendants by instilling in them a fear that, if the property was not delivered, the defendants and others would (1) cause physical injury to those individuals in the future, (2) cause damage to those individuals's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm those individuals materially with respect to their health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix), 110.00 and 20.00.

### RACKETEERING ACT FORTY-NINE
(Extortion Conspiracy/Extortion
John Doe #4 and John Doe #12)

200.    The defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI, committed the following acts, any one of which alone constitutes Racketeering Act Forty-Nine:

A.    Extortion Conspiracy

201.    In or about and between July 2006 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI,

together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money relating to John Doe #12, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.    Extortion

202.    In or about and between July 2006 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: money relating to John Doe #12, from John Doe #4, with the consent of John Doe #4, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.    New York Penal Law Extortion

203.    In or about and between July 2006 and January 2008, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants
NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI,
together with others, did knowingly and intentionally steal
property, to wit: money relating to John Doe #12, from John Doe
#4, by extortion, to wit: by compelling and inducing John Doe #4
to deliver such property to one or more of the defendants by
instilling in him a fear that, if the property was not delivered,
the defendants and others would (1) cause physical injury to John
Doe #4 in the future, (2) cause damage to John Doe #4's property,
and (3) perform an act which would not in itself materially
benefit the defendants, but which was calculated to harm John Doe
#4 materially with respect to his health, safety, business,
calling, career, financial condition, reputation and personal
relationships, in violation of New York Penal Law Sections
155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix)
and 20.00.

<u>RACKETEERING ACT FIFTY</u>
(Bribery of a Labor Official/Honest Services Mail Fraud/
Embezzlement of Union Assets - Laborers' Local 731)

204.    The defendant LEONARD DIMARIA committed the
following acts, any one of which alone constitutes Racketeering
Act Fifty:

A.    <u>Bribery of a Labor Official</u>

205.    On or about and between July 5, 2006 and
November 27, 2006, both dates being approximate and inclusive,

within the Eastern District of New York, the defendant LEONARD DIMARIA, together with others, knowingly and intentionally conferred and offered benefits to a labor official, that is Michael King, who is not named as a defendant in this Racketeering Act, with the intent to influence him in respect to his acts, decisions and duties as a labor official, in violation of New York Penal Law Section 180.15.

     B.    <u>Honest Services Mail Fraud</u>

     206.    On or about and between July 5, 2006 and November 27, 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LEONARD DIMARIA and Michael King, together with others, did knowingly and intentionally devise a scheme and artifice to defraud Local 731 and its members and to obtain property, to wit: a LIUNA membership card issued to a person not entitled to journeyworker membership in the union, by means of false and fraudulent pretenses, relationships and promises and to deprive them of the intangible right to the honest services of Michael King, including the honest services King owed to Local 731 and its members pursuant to Section 501(a) of the LMRDA, the LIUNA Ethical Practices Code and the Uniform Local Union Constitution of the LIUNA.

     207.    It was part of the scheme and artifice to defraud that Michael King agreed to accept and accepted a thing

of value from John Doe #4 with the intent to be influenced in his decisions regarding the admission of an individual to membership in Local 731 and the placement of the individual in a job.

208.    For the purpose of executing the scheme and artifice, the defendant LEONARD DIMARIA and Michael King and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: written information pertaining to an individual proposed for membership in the LIUNA and a LIUNA membership card, in violation of Title 18, United States Code, Sections 1341, 1346 and 2.

C.    Embezzlement of Union Assets

209.    On or about and between July 5, 2006 and November 27, 2006, both dates being approximate and inclusive, in the Eastern District of New York and elsewhere, the defendant LEONARD DIMARIA, together with others including Michael King, while King was a person employed by Local 731, did embezzle, steal and unlawfully and willfully abstract and convert to their own use the moneys, funds, securities, property, and other assets of Local 731, to wit: an application document pertaining to an individual proposed for membership in the LIUNA and a LIUNA membership card, in exchange for approximately $4,000, in violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

RACKETEERING ACT FIFTY-ONE
(Illegal Gambling – Joker/Poker Machines)

210.    In or about and between November 2006 and February 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT DRAGONETTI, together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a gambling business involving the use of joker/poker type gambling machines, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.30(a)(2) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

RACKETEERING ACT FIFTY-TWO
(Theft of Union Benefits/Mail Fraud)

211.    The defendant ANTHONY LICATA committed the following acts, either one of which alone constitutes Racketeering Act Fifty-Two:

A.    Theft of Union Benefits

212.    In or about and between January 2007 and December 2007, both dates being approximate and inclusive, within

89

the Eastern District of New York and elsewhere, the defendant
ANTHONY LICATA, together with others, did embezzle, steal and
unlawfully and willfully abstract and convert to his own use,
moneys, funds, securities, premiums, credits, property and other
assets of the International Brotherhood of Teamsters Local 282
Health and Welfare Benefit Fund, an employee welfare benefit plan
subject to Title I of ERISA, and the International Brotherhood of
Teamsters Local 282 Pension Fund, an employee pension benefit
plan subject to Title I of ERISA, and of funds connected with
such employee benefit plans, in violation of Title 18, United
States Code, Sections 664 and 2.

    B.   <u>Mail Fraud</u>

    213.    In or about and between January 2007 and
December 2007, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendant
ANTHONY LICATA, together with others, did knowingly and
intentionally devise a scheme and artifice to defraud the Local
282 Funds and employees covered by labor contracts with Local 282
who were participants in the Local 282 Funds and to obtain money
and property, to which the Local 282 Funds and participants were
entitled, by means of false and fraudulent pretenses,
representations and promises, to wit: contributions to the Local
282 Funds and the contractual right to have such contributions
made on behalf of such employees.

214.     It was part of the scheme and artifice that the defendant ANTHONY LICATA, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

215.     For the purpose of executing the scheme and artifice, the defendant ANTHONY LICATA and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

<u>RACKETEERING ACT FIFTY-THREE</u>
(Theft of Union Benefits/Mail Fraud)

216.     The defendant JOSEPH SPINNATO committed the following acts, either one of which alone constitutes Racketeering Act Fifty-Three:

A.     <u>Theft of Union Benefits</u>

217.     In or about and between January 2007 and December 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant

JOSEPH SPINNATO, together with others, did embezzle, steal and
unlawfully and willfully abstract and convert to his own use,
moneys, funds, securities, premiums, credits, property and other
assets of the International Brotherhood of Teamsters Local 282
Health and Welfare Benefit Fund, an employee welfare benefit plan
subject to Title I of ERISA, and the International Brotherhood of
Teamsters Local 282 Pension Fund, an employee pension benefit
plan subject to Title I of ERISA, and of funds connected with
such employee benefit plans, in violation of Title 18, United
States Code, Sections 664 and 2.

B.    Mail Fraud

218.    In or about and between January 2007 and
December 2007, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendant
JOSEPH SPINNATO, together with others, did knowingly and
intentionally devise a scheme and artifice to defraud the Local
282 Funds and employees covered by labor contracts with Local 282
who were participants in the Local 282 Funds and to obtain money
and property, to which the Local 282 Funds and participants were
entitled, by means of false and fraudulent pretenses,
representations and promises, to wit: contributions to the Local
282 Funds and the contractual right to have such contributions
made on behalf of such employees.

219.    It was part of the scheme and artifice that the defendant JOSEPH SPINNATO, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

220.    For the purpose of executing the scheme and artifice, the defendant JOSEPH SPINNATO and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

### RACKETEERING ACT FIFTY-FOUR
(Extortion Conspiracy/Extortion –
Staten Island Cement Company Sale)

221.    The defendants DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO and LEONARD DIMARIA committed the following acts, any one of which alone constitutes Racketeering Act Fifty-Four:

A.    <u>Extortion Conspiracy</u>

222.    In or about and between March 2007 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO and LEONARD DIMARIA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money relating to the sale of John Doe #4's Staten Island cement company, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.    <u>Extortion</u>

223.    In or about and between March 2007 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO and LEONARD DIMARIA, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit:

money relating to the sale of John Doe #4's Staten Island cement company, from John Doe #4, with the consent of John Doe #4, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.   New York Penal Law Extortion

224.   In or about and between March 2007 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO and LEONARD DIMARIA, together with others, did knowingly and intentionally steal property, to wit: money relating to the sale of John Doe #4's Staten Island cement company, from John Doe #4, by extortion, to wit: by compelling and inducing John Doe #4 to deliver such property to one or more of the defendants by instilling in him a fear that, if the property was not delivered, the defendants and others would (1) cause physical injury to John Doe #4 in the future, (2) cause damage to John Doe #4's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections

155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

RACKETEERING ACT FIFTY-FIVE

(Extortion Conspiracy/Extortion - Cement Powder Deliveries)

225.    The defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI committed the following acts, any one of which alone constitutes Racketeering Act Fifty-Five:

A.    Extortion Conspiracy

226.    In or about and between October 2007 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: cash payments relating to John Doe #4's delivery of cement powder to the Liberty View Harbor construction site, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.    Extortion

227.    In or about and between October 2007 and January 2008, both dates being approximate and inclusive, within

96

the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: cash payments relating to John Doe #4's delivery of cement powder to the Liberty View Harbor construction site, from John Doe #4, with the consent of John Doe #4, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

     C.   <u>New York Penal Law Extortion</u>

     228.   In or about and between October 2007 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA and VINCENT DRAGONETTI, together with others, did knowingly and intentionally steal property, to wit: cash payments relating to John Doe #4's delivery of cement powder to the Liberty View Harbor construction site, from John Doe #4, by extortion, to wit: by compelling and inducing John Doe #4 to deliver such property to one or more of the defendants by instilling in him a fear that, if the property was not delivered, the defendants and others would (1) cause physical injury to John Doe #4 in the future, (2) cause damage to

John Doe #4's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

<u>RACKETEERING ACT FIFTY-SIX</u>
(Extortion Conspiracy/Attempted Extortion -
Staten Island Cement Company Sale)

229.    The defendants THOMAS CACCIOPOLI and JOSEPH SCOPO committed the following acts, any one of which alone constitutes Racketeering Act Fifty-Six:

A.    <u>Extortion Conspiracy</u>

230.    In or about January 2008, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI and JOSEPH SCOPO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money relating to the sale of John Doe #15's Staten Island cement company, from John Doe #15, an individual whose identity is known to the grand jury, with the consent of John Doe #15, which consent was to be induced through

98

wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

      B.    <u>Attempted Extortion</u>

      231.    In or about January 2008, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI and JOSEPH SCOPO, together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others attempted to obtain property, to wit: money relating to the sale of John Doe #15's Staten Island cement company, from John Doe #15, with the consent of John Doe #15, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

      C.    <u>New York Penal Law Attempted Extortion</u>

      232.    In or about January 2008, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI and JOSEPH SCOPO, together with others, did knowingly and intentionally attempt to steal property, to wit:  money relating to an the sale of John Doe #15's Staten Island cement company, from John Doe #15, by extortion, to wit:  by compelling and inducing John Doe #15 to deliver such property to the defendants by instilling in him a fear that, if the property was

not delivered, the defendants and others would (1) cause physical injury to John Doe #15 in the future, (2) cause damage to John Doe #15's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #15 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix), 110.00 and 20.00.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

## COUNT TWO
### (Extortion Conspiracy - Trucking)

233.    In or about and between December 1999 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, also known as "Tommy Sneakers," ROBERT EPIFANIA, also known as "Bobby the Jew," and JOSEPH SCOPO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: cash payments relating to John Doe #4's trucking concerns, from John Doe #4,

with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT THREE
### (Extortion - Trucking)

234.     In or about and between December 1999 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, also known as "Tommy Sneakers," ROBERT EPIFANIA, also known as "Bobby the Jew," and JOSEPH SCOPO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: cash payments relating to John Doe #4's trucking concerns, from John Doe #4, with the consent of John Doe #4, which consent was induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT FOUR
### (Theft of Union Benefits Conspiracy - Teamsters Local 282)

235.     On or about and between June 27, 2002 and January 31, 2008, both dates being approximate and inclusive,

within the Eastern District of New York and elsewhere, the defendants SARAH DAURIA and JOSEPH SPINNATO, together with others, did knowingly and intentionally conspire to commit offenses against the United States, to wit: embezzling, stealing and unlawfully abstracting and converting to their own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of ERISA, and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA, the objects of said conspiracy being violations of Title 18, United States Code, Section 664.

236.    In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants SARAH DAURIA and JOSEPH SPINNATO, together with others, committed and caused to be committed, among others, the following:

<u>OVERT ACTS</u>

a.    On or about June 21, 2005, the defendant SARAH DAURIA spoke with John Doe #4 concerning falsifying trucking records in connection with an audit by the International Brotherhood of Teamsters Local 282.

b.    On or about June 29, 2005, the defendant SARAH DAURIA spoke with John Doe #4 concerning falsifying

trucking records in connection with an audit by the International Brotherhood of Teamsters Local 282.

        c.   On or about July 18, 2005, the defendant SARAH DAURIA spoke with the defendant JOSEPH SPINNATO and John Doe #4 concerning falsifying trucking records in connection with an audit by the International Brotherhood of Teamsters Local 282.

        d.   On or about July 19, 2005, the defendant SARAH DAURIA spoke with John Doe #4 concerning falsifying trucking records in connection with an audit by the International Brotherhood of Teamsters Local 282.

        e.   On or about October 18, 2006, the defendant SARAH DAURIA spoke with John Doe #4 concerning falsifying trucking records in connection with an audit by the International Brotherhood of Teamsters Local 282.

        f.   On or about October 30, 2006, the defendant SARAH DAURIA spoke with John Doe #4 concerning falsifying trucking records in connection with an audit by the International Brotherhood of Teamsters Local 282.

        g.   On or about November 16, 2006, the defendant SARAH DAURIA spoke with John Doe #4 concerning falsifying trucking records in connection with an audit by the International Brotherhood of Teamsters Local 282.

        (Title 18, United States Code, Sections 371 and 3551 et seq.)

103

## COUNT FIVE
(Theft of Union Benefits – Teamsters Local 282)

237.     On or about and between June 27, 2002 and January 31, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SARAH DAURIA and JOSEPH SPINNATO, together with others, did knowingly and intentionally embezzle, steal and unlawfully abstract and convert to their own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of ERISA, and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA.

(Title 18, United States Code, Sections 664, 2 and 3551 et seq.)

## COUNT SIX
(Mail Fraud Conspiracy – Teamsters Local 282)

238.     On or about and between June 27, 2002 and January 31, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH SPINNATO and SARAH DAURIA, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud Local 282 Funds and the employees covered by labor contracts with Local 282 who were participants

in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses, representations and promises, to wit: contributions to the Local 282 Funds and the contractual right to have such contributions made on behalf of such employees.

239.   It was part of the scheme and artifice that the defendants JOSEPH SPINNATO and SARAH DAURIA, together with others, would and did submit and cause to be submitted false information regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

240.   For the purpose of executing the scheme and artifice, the defendants JOSEPH SPINNATO and SARAH DAURIA and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittances to the Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

<u>COUNT SEVEN</u>
(Mail Fraud - Teamsters Local 282)

241.     On or about and between June 27, 2002 and
January 31, 2008, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendants JOSEPH SPINNATO and SARAH DAURIA, together with
others, did knowingly and intentionally devise a scheme and
artifice to defraud Local 282 Funds and the employees covered by
labor contracts with Local 282 who were participants in the Local
282 Funds and to obtain money and property, to which the Local
282 Funds and participants were entitled, by means of false and
fraudulent pretenses, representations and promises, to wit:
contributions to the Local 282 Funds and the contractual right to
have such contributions made on behalf of such employees.

242.     It was part of the scheme and artifice that
the defendants JOSEPH SPINNATO and SARAH DAURIA, together with
others, would and did submit and cause to be submitted false
information regarding hours worked by employees covered by labor
contracts with Local 282, claiming that certain hours had been
worked by such employees who had, in fact, worked more hours,
thereby under reporting and under paying contributions to the
Local 282 Funds which were owed to the funds and required to be
made on behalf of the employees.

243.     For the purpose of executing the scheme and
artifice, the defendants JOSEPH SPINNATO and SARAH DAURIA and

106

others did place and cause to be placed in authorized
depositories for mail matter to be delivered by the United States
Postal Service items of mail matter, to wit: remittances to the
Local 282 Funds.

    (Title 18, United States Code, Sections 1341, 2 and
3551 et seq.)

### COUNT EIGHT
(False Statements - Teamsters Local 282)

    244.    On or about and between June 27, 2002 and
January 31, 2008, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendant JOSEPH SPINNATO, together with others, in documents
required by Title I of ERISA to be kept as part of the records of
the Local 282 Funds, did make and cause to be made false
statements and representations of fact, knowing them to be false,
and did knowingly conceal, cover up and fail to disclose facts
and cause to be concealed, covered up, and not disclosed, facts
the disclosure of which was necessary to verify, explain, clarify
and check for accuracy and completeness the Internal Revenue
Forms 5500 filed by the Local 282 Funds, which forms are required
by Title I of ERISA to be published and filed annually with the
Secretary of Labor, by submitting, and causing to be submitted,
remittance reports to the Local 282 Funds which falsely reported

the number of hours worked by employees covered by labor contracts with Local 282 and falsely reported the amounts of money due and owing the Local 282 Funds.

(Title 18, United States Code, Sections 1027, 2 and 3551 et seq.)

## COUNT NINE
(Extortionate Extension of Credit Conspiracy - John Doe #1)

245.    In or about and between January 2003 and October 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI, also known as "Vinny," "Skinny," "Mike," "Mikey" and "Marbles," and STEVEN IARIA, also known as "Stevie I," "John," "Simon," "Herman" and "Alan," together with others, knowingly and intentionally conspired to make extortionate extensions of credit.

(Title 18, United States Code, Sections 892(a) and 3551 et seq.)

## COUNT TEN
(Extortion Conspiracy - Staten Island Cement Company Profits)

246.    In or about and between December 2003 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, also known as "Tommy Sneakers," MARIO CASSARINO, also known as "Lanza," DOMENICO CEFALU, also known as "Italian Dom," "Dominic," "Dom from 18th Avenue" and "The

Greaseball," JOSEPH COROZZO, also known as "JoJo" and "Miserable," NICHOLAS COROZZO, also known as "Nicky," "Little Nicky," "The Doctor," "The Little Guy," "Seymour," "Grandpa" and "Grandfather," JOHN D'AMICO, also known as "Jackie the Nose" and "Jackie," LEONARD DIMARIA, also known as "Lenny," "L," "The Conductor," "Nike," "Uncle" and "Fatso," ROBERT EPIFANIA, also known as "Bobby the Jew," LOUIS FILIPPELLI, ERNEST GRILLO, also known as "Ernie," "Eyes" and "Baldy," and VINCENT PACELLI, also known as "Vinny Basile," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: cash and check payments relating to the operation of John Doe #4's Staten Island cement company, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 <u>et seq</u>.)

<u>COUNT ELEVEN</u>
(Extortion - Staten Island Cement Company Profits)

247.    In or about and between December 2003 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, also known as "Tommy Sneakers," DOMENICO