```
JL:EMN
F. #2007R00730
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -                         No. 08 CR 76 (NGG)

JOSEPH AGATE, et al.,

               Defendants.

- - - - - - - - - - - - - - - - -X

## THE GOVERNMENT'S INITIAL CASAMENTO SUBMISSION

                                     BENTON J. CAMPBELL
                                     United States Attorney
                                     Eastern District of New York
                                     271 Cadman Plaza East
                                     Brooklyn, New York 11201

```
Joey Lipton
Roger Burlingame
Daniel Brownell
Evan Norris
Assistant United States attorneys
Amy Legow Cohn
Special Assistant United States Attorney
     (Of Counsel)
```

PRELIMINARY STATEMENT

The government submits this memorandum pursuant to United States v. Casamento, 887 F.2d 1141, 1151-52 (2d Cir. 1989). At this time, the concerns set forth in Casamento regarding a "mega trial" have not yet been implicated because the parties are at the inception of pre-trial proceedings. The continued joinder of all defendants should expedite pre-trial proceedings -- including discovery, motion practice and plea negotiations -- for the case as a whole and may reduce the number of defendants awaiting trial to a number that can more easily be tried together. Plea negotiations may also yield a group of trial defendants who more easily may be severed into groups in a manner acceptable to the Court and the parties. For these reasons, and because a mega trial remains hypothetical at this time, the Court should proceed with a unified pre-trial process in this case.

STATEMENT OF THE CASE

This case arises from a long-term investigation into the organized crime families of La Cosa Nostra, including a three-year infiltration by a cooperating witness of the Gambino crime family. The investigation resulted in the indictment of 62 defendants, including dozens of organized crime members and associates of the Gambino, Bonanno and Genovese families, along with a number of construction industry and union officials. Within the Gambino family alone, the indictment charges each

active member of the administration, along with six captains and acting captains and sixteen soldiers.

The indictment alleges racketeering conspiracy and substantive charges spanning more than three decades and centering on the Gambino family's continued corrupt influence and extortionate control over the greater New York City construction industry and its supporting unions. It also highlights the family's willingness to resort to murder and other crimes of violence to resolve disputes, charging seven acts of murder, murder conspiracy and attempted murder.

Nearly all of the criminal conduct at issue in the indictment occurred in the New York City metropolitan area. Although some of the criminal conspiracies existed well in the past, most of the government's evidence at trial will relate to conduct that occurred between 2003 and 2008. Moreover, with few exceptions, every crime charged in the 80-count indictment was committed by at least one member or associate of the Gambino family.

## INITIAL CASAMENTO STATEMENT

In large multi-defendant cases, <u>Casamento</u> requires the government to make a good-faith estimate of the "time reasonably anticipated to present the government's case." 887 F.2d at 1151. At this early stage, however, it is extraordinarily unlikely that all 62 defendants named in the indictment would proceed to trial,

and thus any discussion of time estimates is premature. This submission therefore focuses on the immediate benefits of keeping all pre-trial proceedings together.

I.  Benefits of Proceedings Against All Defendants Together

It is not the government's intention to try all 62 defendants together. It is merely the government's intention to limit, to as few as possible, the number of trials of these defendants.

    A.  General Considerations

Rule 8(b) of the Federal Rules of Criminal Procedure provides, in pertinent part:

> Two or more defendants may be charged in the same indictment . . . if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Absent the concerns raised in Casamento, the general rule is that defendants indicted together should be tried together. See Zafiro v. United States, 506 U.S. 534, 537 (1993); United States v. Feyrer, 333 F.3d 110, 114-15 (2d Cir. 2003); United States v. Diaz, 176 F.3d 52, 102 (2d Cir. 1999); United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998); United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993); United States v. Gambino, 784 F. Supp. 129, 133 (S.D.N.Y. 1992).

> As the Supreme Court has stated:
>
> There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials "play a vital role in the criminal justice system." . . . They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." For these reasons, we have repeatedly approved of joint trials.

Zafiro, 506 U.S. at 537 (quoting Richardson v. Marsh, 481 U.S. 200, 209-10 (1987) (internal citations omitted)).

It is for these sound policy reasons that courts have held that persons indicted together for crimes arising out of the same acts and involving the same evidence should generally be tried together. See United States v. Jackson, 778 F.2d 933, 943 (2d Cir. 1985); United States v. Arroyo-Angulo, 580 F.2d 1137, 1144 (2d Cir. 1978); United States v. Corr, 543 F.2d 1042, 1052 (2d Cir. 1976). The presumption in favor of joint trials is particularly strong where many of the crimes charged involve a common scheme or plan.

The preference for joint trials is particularly strong where the defendants are charged with participating in a common plan or scheme such as a racketeering conspiracy. See Salameh, 152 F.3d at 115; United States v. Cardascia, 951 F.2d 474, 482 (2d Cir. 1991); see also Feyrer, 333 F.3d at 114 (securities and mail fraud conspiracy); United States v. Turoff, 853 F.2d 1037, 1043 (2d Cir. 1988) (multiple defendants properly tried together

4

in tax fraud conspiracy case where charged acts were part of a series of acts or transactions).  Thus, this Court has stated that it "has a preference for joint trials of defendants alleged to have participated in the same RICO conspiracy."  United States v. Vincent Basciano, No. 03 CR 929 (NGG), Memorandum & Order at 6 (Dec. 12, 2005) (citing United States v. Urso, 369 F. Supp. 2d 254, 269-70 (E.D.N.Y. 2005)); see also United States v. Megale, 363 F. Supp. 2d 359, 365 (D. Conn. 2005) ("'Joint trials are favored in RICO cases' because RICO and RICO conspiracy counts often 'function[ ] as the connective tissue . . . that allow[s] joinder of [separate] incidents and . . . defendants in a single trial.'") (citation omitted); United States v. Triumph Capital Group, Inc., 260 F. Supp. 2d 432, 438 (D. Conn. 2002) (joinder of multiple defendants in a racketeering case is "particularly appropriate even if each defendant is charged with committing different predicate acts as part of the alleged pattern of racketeering activity.").

 B. <u>Benefits of Keeping the Case Intact</u>

  As stated above, it is not the government's intention to try all 62 defendants together.  As a practical matter, it is highly unlikely that all 62 defendants will proceed to trial.  Even absent severance, plea agreements will likely reduce the number of defendants so that any trial of the remaining defendants would not exceed four months, in which case Casamento

would not require any special justification for a single trial. Moreover, disposition by plea agreement of the charges against certain defendants might permit divisions of the remaining defendants into groups that could sensibly be tried separately.

### 1. Pre-Trial Considerations

Perhaps the most important benefit of joining numerous defendants in a single indictment in a case such as this relates to the pre-trial process. Casamento speaks only of the dangers of lengthy multi-defendant "mega-trials." Casamento 887 F.2d at 1151. Nothing in Casamento requires or encourages district courts to divide a multi-defendant indictment into trial groups during pre-trial proceedings. See United States v. Palermo, 2001 WL 1851323, at *1 & n.2 (S.D.N.Y. 2001) (denying pre-trial motion to sever in 21-defendant RICO case, made in conjunction with other motions, as "premature," despite the fact that "[i]t does appear extremely unlikely that this case as presently constituted can be tried in a single trial") (citing Casamento); United States v. Heatley, 1997 WL 12961, at *2-4 (S.D.N.Y. 1997) (denying pre-trial motion to sever by two non-RICO defendants in eighteen-defendant RICO case as "premature," in part, because "[t]he Court does not know how many defendants will plead before trial or how other pre-trial motions might limit the scope of the trial. As such, neither the Court nor the Government can reasonably predict the length of a trial at this time")

6

(collecting cases); United States v. Jimenez, 824 F. Supp. 351, 367 (S.D.N.Y. 1993) (denying pre-trial motions to sever in thirteen-defendant case, in part, because "we fully expect that the number of dependants standing trial will not exceed the parameters set forth [in Casamento]"); United States v. Vasquez, 1992 WL 249891, at *3 (S.D.N.Y. 1992) (denying pre-trial motion to sever in seven-defendant case as "premature," in part, because "the number of defendants who will decide to go to trial rather than plead guilty, remain[s] undetermined").

The government recognizes that with respect to pre-trial proceedings, the Speedy Trial Act, 18 U.S.C. §§ 3161-74, and the Sixth Amendment, see Barker v. Wingo, 407 U.S. 514, 429-30 (1972), impose limitations with which the Court and parties must comply.

    a.   Speedy Trial Act

With respect to the Speedy Trial Act, the government has filed a motion seeking to have this case designated complex pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii).  If the government's motion is granted, the length of any resulting exclusions will be directly tied to the actual needs of the case.  See United States v. LoFranco, 818 F.2d 276, 277 (2d Cir. 1987) (exclusions of time for complex case should be "reasonably related to the actual needs of the case").

In any event, the continuing fugitive status of defendant Nicholas Corozzo and the pending motion for reassignment by defendant Joseph Corozzo, joined to date by defendants Leonard DiMaria, William Scotto, Joseph Chirico, Vincent Pacelli, Frank Cali, Joseph Agate, Joseph Spinnato and Charles Carneglia, independently require an exclusion of time under the Act as against all defendants.  See 18 U.S.C. §§ 3161(h)(1)(F) and 3161(h)(7).

      b.   Sixth Amendment

Moreover, with respect to the Sixth Amendment, the likely length of pre-trial proceedings in this case will be reasonable under the circumstances and far less than has been found permissible by the Supreme Court and the Second Circuit. See Barker, 407 U.S. at 533-34 (five-year delay); United States v. Abad, 2008 WL 239057, at *3-4 (2d Cir. 2008) (31-month delay); United States v. Williams, 372 F.3d 96, 112-13 (2d Cir. 2004) (34-month delay); United States v. Vasquez, 918 F.2d 329, 337 (2d Cir. 1990) (26-month delay); Montalvo v. United States, 862 F.2d 425, 426 (2d Cir. 1988) (per curiam) (eight-year delay); Rayborn v. Scully, 858 F.2d 84, 89 (2d Cir. 1988) (seven-year delay); United States v. McGrath, 622 F.2d 36, 41 (2d Cir. 1980) (24-month delay); United States v. Lane, 561 F.2d 1075, 1078 (2d Cir. 1977) ("The delay here was quite lengthy approximately 58 months or just under five years but nevertheless was shorter than that

8

in other cases in which no Sixth Amendment violation has been found."). Accordingly, speedy trial considerations present no impediment to completing all pre-trial proceedings before determining whether <u>Casamento</u> requires severance.

### 2. <u>Advantages of Pre-Trial Joinder</u>

In the pre-trial stage, there are obvious benefits to the parties and the Court in allowing discovery, motion practice and plea discussions to go forward on the same schedule with respect to all defendants. First, having all of the defendants proceed together will simplify the discovery process. As has happened in prior multi-defendant cases, the defendants in this case might select one or more attorneys as "lead" counsel to coordinate the exchange of discovery and communications among defense counsel, sparing the government and defendants the redundancy and logistical inefficiencies occasioned by a division of the case at this time.

Second, joinder of multiple defendants should dramatically streamline motion practice. Here, beyond the motions for reassignment and those relating to administrative detention already filed, there may be further motions regarding suppression of evidence, admissibility of evidence, dismissal of counts and other issues that are common to multiple defendants. There also may be substantive severance motions that involve multiple defendants. Joinder of all defendants for the duration

of motion proceedings will make it possible to eliminate duplicative motions, coordinate a motion schedule, and schedule oral argument so that each issue is submitted to the Court only once and the Court has the benefit of briefing from all concerned parties before rendering a decision.

Third, the continuing joinder of the defendants facilitates plea negotiations. Specifically, providing the parties with the opportunity to conduct plea negotiations while all defendants remain joined together saves resources for the government and, in return, makes defendants eligible for a "global" disposition reduction under the Sentencing Guidelines. In <u>United States v. Garcia</u>, 926 F.2d 125 (2d Cir. 1991), the court found conservation of judicial resources to be a permissible basis for departure, reducing the defendant's sentence by four levels for his cooperation and early plea, which "facilitat[ed] the disposition of the case without a trial." <u>Id.</u> at 128. In reaching its decision, the court affirmed the lower court's finding that the Guidelines did not adequately consider the kind of cooperation rendered by a defendant who breaks a "log jam" in a multi-defendant case. <u>Id.</u> at 127.

In the context of large, multi-defendant cases like this one, both Eastern and Southern District of New York courts have embraced <u>Garcia</u> in connection with global pleas that promoted the efficient disposition of complex matters without

lengthy trials. See, e.g., Rodriguez v. United States, 1998 WL 755158, at *1 (S.D.N.Y. 1998) (noting, in ruling on habeas corpus petition, that the court had granted a two-point reduction at sentencing pursuant to Garcia where "petitioner was one of a group of seven defendants who initiated plea discussions (which resulted in pleas) 'more or less as a group'"); United States v. Bobb, 1993 WL 8653, at *4 (S.D.N.Y. 1993) (applying Garcia to uphold two-point reduction where all 44 defendants pleaded guilty "in recognition of the significant conservation of judicial and prosecutorial resources that would be accomplished by such a global disposition"); United States v. Solof, 1993 WL 43360, at *1 (S.D.N.Y. 1993) (citing Garcia as justification to grant a two-point "global disposition" reduction for multi-defendant plea); see also Matera v. United States, 2006 WL 3479067, at *2 (E.D.N.Y. 2006) (noting, in denial of habeas corpus petition, the court's enforcement at sentencing of four-point reduction for "acceptance of responsibility and participation in global plea agreement"); Nix v. United States, 111 F. Supp. 2d 186, 188 (E.D.N.Y. 2000) (noting, in denial of habeas corpus petition, the court's enforcement at sentencing of terms of global plea agreement in which defendant agreed to specific sentence); United States v. Mosquera, 1994 WL 593977, at *14 (E.D.N.Y. 1994) (noting, in report to the court, that court had accepted a Guidelines reduction based on conservation of resources); United

11

States v. Catoggio, 98 CR 1129 (RJD) (E.D.N.Y.) (two-level global reduction triggered where 30 or more defendants in 55-defendant case promptly pleaded guilty).

In sum, the benefits to the pre-trial process of keeping all defendants together in one case are substantial. These benefits extend to the Court, to the government and to the defendants themselves. Based on past experience, it is likely that the pre-trial process will reduce the number of defendants and the charges that will remain for trial. Severance at this early stage based only on Casamento considerations would likely only require the subsequent consolidation of severed defendants for trial if it turns out severance has left isolated individuals or small groups awaiting duplicative trials. See Fed. R. Crim. P. 13.

II. Considerations Favoring a Single Trial

In the unlikely event that all or substantially all of the defendants proceed to trial, the benefits of a joint trial versus many multiple trials are particularly acute here. Nonetheless, the government does not seek to conduct a "mega trial" and would prefer not to conduct any trial in which the government's case will exceed four months. There are, however, a host of considerations that would justify a single trial of as many defendants as possible that are worth addressing.

The most important factor favoring a single trial is the redundancy that would be created by multiple trials, no matter how the defendants are divided.  As a result of the similarity of many of the RICO and non-RICO charges, a trial of the racketeering defendants will necessarily require the introduction of evidence of nearly all of the non-RICO crimes.  Thus dividing the RICO and non-RICO defendants will only create two mega trials, each of undiminished length.  Moreover, the participation of several defendants in many different crimes and, collectively, in almost every charged crime, makes it nearly impossible to divide the defendants or the charges in a manner that would eliminate or even substantially limit redundancy.

There are defendants who are charged with only one or two crimes, but most are also charged with other defendants involved in the racketeering conspiracy.  As a result, severing the defendants who face the fewest charges will engender multiple trials, each one of which will replicate a portion of the proceedings of the main trial, the size of which will not have been meaningfully reduced.  In other words, if the Court were to sever the defendants who are charged with the fewest crimes, the burden on the judicial system would be multiplied rather than reduced.  One jury would still have to hear all of the evidence with respect to the more ubiquitous defendants, while several other juries would hear some, though not all, of the same evidence with respect to other defendants.

In sum, although a joint trial of all 62 defendants in the case is likely unmanageable, limiting the number of trials to as few as possible will serve the interests of judicial economy without unduly prejudicing any defendant.

## CONCLUSION

For the foregoing reasons, the government submits that maintaining all of the charged defendants in one case during the pre-trial proceedings is consistent with the fair administration of justice. If necessary, the government will revisit these issues in a subsequent <u>Casamento</u> memorandum once the defendants who are likely to proceed to trial are identified.

Dated:    Brooklyn, New York
          February 26, 2008

                                        Respectfully submitted,

                                        BENTON J. CAMPBELL
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

Joey Lipton
Roger Burlingame
Daniel Brownell
Evan Norris
Assistant United States Attorneys
Amy Legow Cohn
Special Assistant United States Attorney
     (Of Counsel)